**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| R.E. GAS DEVELOPMENT, LLC, *et al.*,[1] | : | Case No. 18-22032 (JAD) |
| Debtors. | : | (Joint Administration Requested) |
| R.E. GAS DEVELOPMENT, LLC, *et al.*, | : | |
| Movants, | : | |
| v. | : | |
| NO RESPONDENT, | : | |
| Respondent. | : | |

**DEBTORS' EMERGENCY MOTION FOR ORDER AUTHORIZING**
**THE DEBTORS TO HONOR THEIR OBLIGATIONS TO PURCHASERS AND**
**MIDSTREAM-RELATED PARTIES IN THE ORDINARY COURSE OF BUSINESS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") move the Court (this "Motion"), pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1 of the Local Bankruptcy Rules of the U.S. Bankruptcy Court for the Western District of Pennsylvania (the "Local Rules"), for the entry of an order, in substantially the form attached as Exhibit A (the "Proposed Order"), authorizing, but not directing, the Debtors, to continue to pay and/or honor all of their obligations to the Purchasers (as defined below) and the Midstream-Related Parties (as defined below), in the ordinary course

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): R.E. Gas Development, LLC (5422); Rex Energy Corporation (4402); Rex Energy Operating Corp. (0390); and Rex Energy I, LLC (9799). The address of each of the Debtors is 366 Walker Drive, State College, Pennsylvania 16801.

NAI-1503725681v1

of business, subject to any order governing the use of cash collateral and approving the debtor in possession facility (the "DIP Facility")[2]. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.    General Background

2. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of their properties and are managing their business, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. Debtor R.E. Gas Development, LLC ("R.E. Gas") is a Delaware limited liability company headquartered in State College, Pennsylvania. Substantially all of the assets of R.E. Gas are located in Pennsylvania. Its parent entity is Rex Energy Corporation ("Rex Energy"), a Delaware corporation. Rex Energy was incorporated and became a public company in 2007. Each of the other Debtors is a wholly-owned direct subsidiary of Rex Energy. The Debtors are independent oil and gas companies operating in the Appalachian Basin, engaged in the acquisition, production, exploration and development of oil, natural gas and natural gas liquids. The Debtors are focused on drilling and exploration activities in the Marcellus Shale, Utica Shale and Upper Devonian Shale.

---

[2] Under the DIP Facility, Angelo, Gordon Energy Servicer, LLC is the administrative and collateral agent for the lender parties thereunder (the "DIP Agent").

4. Additional information regarding the Debtors and these chapter 11 cases (these "Cases"), including the Debtors' business, corporate structure, financial condition and reasons for and objectives of these Cases, is set forth in the *Declaration of Thomas C. Stabley in Support of First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

### B. The Purchasers and the Midstream-Related Parties[3]

5. The Debtors are in the business of exploring, acquiring, producing, developing and ultimately selling oil, natural gas and natural gas liquids. In the ordinary course of their business and pursuant to purchase and sale agreements, the Debtors sell oil, natural gas and natural gas liquids to third parties (collectively, the "Purchasers"). Additionally, the Debtors work with various third parties to transport and market their products in connection with the sale process (the "Midstream-Related Parties"). The Debtors have certain transportation and marketing agreements with the Midstream-Related Parties. In other instances, the purchase and sale agreements address directly the transportation of the Debtors' products by a Midstream-Related Party, and the purchase and sale agreement provides for the Purchaser to deduct the amount it pays to the Midstream-Related Party to transport the Debtors' product from the purchase price it pays to the applicable Debtor. Some purchase and sale agreements also provide for the Purchasers to deduct from the purchase price owed to the Debtors other amounts owed by the Debtors to the Purchasers that are related to the purchase and sale of the Debtors' products. By this Motion, the Debtors seek authority to continue to allow the Purchasers to deduct the amounts that they pay to the Midstream-Related Parties and amounts that the Debtors owe the

---

[3] The descriptions of the Debtors' relationship with BP, TGT, the other Purchasers and the other Midstream-Related Parties contained herein are provided for convenience only and are qualified in all respects by the actual terms of the Debtors' agreements with the Purchasers and the Midstream-Related Parties. Nothing contained herein shall have the effect of modifying the terms of any such agreement or altering any party's rights and obligations thereunder.

Purchasers related to the purchase and sale of the Debtors' products from the purchase price paid to the applicable Debtor, regardless of whether those amounts relate to the prepetition period or the postpetition period.

6.  For example, R.E. Gas has numerous agreements with BP Energy Company ("BP").[4]  BP is one of the Purchasers of the Debtors' natural gas and natural gas liquids.  The natural gas that BP purchases from R.E. Gas is transported from Pennsylvania to Louisiana on certain pipelines, including a pipeline owned by Texas Gas Transmission, LLC ("TGT"), a Midstream-Related Party.  BP pays for a portion of the costs of transporting the natural gas on TGT's pipeline and deducts those amounts and other firm transportation costs and marketing costs from the purchase price paid to R.E. Gas.  In order to transport R.E. Gas's natural gas to Louisiana, TGT had to make certain changes to its existing pipeline.  In connection therewith, TGT required a letter of credit, which BP posted on behalf of R.E. Gas, in the amount of $14,100,000.00.  In connection with the letter of credit, R.E. Gas owes BP a monthly fee, which BP also nets from the purchase price owed to R.E. Gas.

7.  The Debtors believe that, as of the Petition Date, they are current with respect to their obligations to the Purchasers and the Midstream-Related Parties under the purchase and sale agreements and related transportation and marketing agreements; however, in the ordinary course of business, the Debtors believe that they will owe directly the Midstream-Related Parties approximately $18,508,000.00 related to the prepetition period, which amount has not yet been finally quantified and for which the Debtors have not yet received invoices.  By this Motion, the Debtors seek authority to honor these prepetition obligations to the Purchasers and the

---

[4] Pursuant to a master agreement dated November 1, 2016, BP and Rex Energy are parties to hedging and trading agreements and engage in ordinary course hedging and trading activities.  This Motion does not address their hedging and trading agreements, which are the subjects of a separate motion filed contemporaneously herewith.

Midstream-Related Parties in the ordinary course of business and consistent with their prepetition practices.

8.  The Debtors believe their postpetition obligations to the Purchasers and the Midstream-Related Parties (a) fall within the ordinary course of their business and (b) are authorized without the entry of an order, but, out of an abundance of caution, by this Motion, the Debtors seek authority to continue to pay and/or honor all of their postpetition obligations to the Purchasers and the Midstream-Related Parties, in the ordinary course of business.

## RELIEF REQUESTED

9.  The Debtors request entry of an order, substantially in the form of the Proposed Order, authorizing, but not directing, the Debtors to continue to pay and/or honor all of their obligations to the Purchasers and the Midstream-Related Parties, in the ordinary course of business, subject to any order governing the use of cash collateral and any order approving the DIP Facility.  Finally, the Debtors request that the Proposed Order be enforceable immediately upon entry.

## BASIS FOR RELIEF

**A.    The Doctrine of Necessity Provides a Basis for Granting the Requested Relief**

10.  Courts have repeatedly recognized "the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operations of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted).  The Supreme Court first articulated the equitable common law principle

referred to as the "doctrine of necessity" over 125 years ago in *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882).

11.   Under the "doctrine of necessity," a bankruptcy court may exercise its equitable power to authorize a debtor to pay critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. *See In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981)) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized'").

12.   The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business. Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty. *See In re CoServ, LLC*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

13.   The Purchasers and the Midstream-Related Parties compose the core of the Debtors' business, and without their confidence in and support of the Debtors during these Cases, the Debtors' reorganization efforts will not succeed. The Debtors' operations and businesses simply cannot continue without the maintenance of their relationships with the Purchasers and the Midstream-Related Parties. By this Motion, the Debtors intend to signal to the Purchasers

and the Midstream-Related Parties that they expect to honor their obligations and conduct business as usual.

> B. Section 363(c)(1) of the Bankruptcy Code Supports the Debtors' Satisfaction of their Obligations to the Purchasers and the Midstream-Related Parties on a Postpetition Basis

14. Section 363(c)(1) of the Bankruptcy Code provides that a debtor in possession "may enter into transactions . . . in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." Section 363 is designed to allow a debtor in possession "the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight." *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992); *see Collier on Bankruptcy* ¶ 363.03 (Richard Levin & Henry J. Sommer eds., 16th ed.) (explaining that section 363(c)(1) of the Bankruptcy Code "is of particular importance in a chapter 11 case . . . involving a business, where the continued operation is essential to the preservation of the going concern value of the business.").

15. Courts use two tests for determining whether a transaction is in the ordinary course of business: (a) the horizontal dimension test and (b) the vertical dimension test. *See In re Roth Am., Inc.*, 975 F.2d at 952; *In re Sportsman's Warehouse, Inc.*, No. 09-10990 (CSS), 2013 WL 492554, at *9 (Bankr. D. Del. Feb. 7, 2013) (explaining that "[i]n determining whether a transaction is in the ordinary course of business, the Third Circuit has adopted the two-part horizontal and vertical dimension test.").

16. Under the horizontal dimension test, courts consider whether, from an industry-wide perspective, the transaction at issue is of the sort commonly undertaken by companies in that industry. *See, e.g.*, *In re Vision Metals, Inc.*, 325 B.R. 138, 143 (Bankr. D. Del.), *opinion after grant of reconsideration*, 327 B.R. 719 (Bankr. D. Del. 2005). The transactions set forth above and all of the Debtors' transactions with the Purchasers and the Midstream-Related Parties

that provide for the sale of the Debtors' oil, natural gas and/or natural gas liquids to third parties or the transportation or marketing of the Debtors' oil, natural gas and/or natural gas liquids in connection with the sale process are undoubtedly transactions of the sort commonly undertaken by companies in the business of acquiring, producing, exploring for and developing oil, natural gas and natural gas liquids. Moreover, the miscellaneous provisions designed to guaranty performance in the Debtors' agreements with the Purchasers and the Midstream-Related Parties, such as the provision by which BP, on behalf of R.E. Gas, provided a letter of credit to TGT, are commonly included in purchase and sale and related agreements in the oil and gas industry.

17. Under the vertical dimension test, courts consider the creditors' expectations and whether the economic risk of the transaction at issue is different from those accepted by creditors that extended credit to a debtor prior to the petition date. *See, e.g.*, *In re Vision Metals, Inc.*, 325 B.R. at 144. Under this test, "ordinariness" is defined by the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the ordinary course of business. *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 797 (Bankr. D. Del. 2007) (citing *In re Roth Am., Inc.*, 975 F.2d at 953). The primary focus of the vertical dimension test is the debtor's prepetition business practices and conduct. *Id.* The Debtors' purchase and sale agreements with the Purchasers and transportation and marketing agreements with the Midstream-Related Parties and the transactions consummated pursuant thereto are undoubtedly consistent with the Debtors' prepetition conduct. In fact, many of the Debtors' agreements with the Purchasers and the Midstream-Related Parties have been in place for several years. Selling oil and gas to the Purchasers, with the help of the Midstream-Related Parties, is exactly the type of transaction that the Debtors' creditors expect and want the Debtors to consummate and honor. By this Motion, the Debtors seek only to continue their transactions with the Purchasers and the

Midstream-Related Parties in a manner consistent with their prepetition practices.

18. Accordingly, there is no question that paying and/or honoring their obligations to the Purchasers and the Midstream-Related Parties pursuant to their prepetition (or similar postpetition) sale and purchase, transportation and marketing agreements is in the ordinary course of the Debtors' business and thus authorized pursuant to section 363(c)(1) of the Bankruptcy Code.

### C.    The Automatic Stay, to the Extent Applicable, Should be Modified on a Limited Basis

19. The Proposed Order modifies the automatic stay provisions of section 362 of the Bankruptcy Code to the extent necessary to allow the Purchasers, pursuant to and in compliance with specific purchase and sale agreements, to net from the purchase price owed to the Debtors appropriate and proper amounts and obligations owed to Midstream-Related Parties and to deduct from the purchase price owed to the Debtors amounts owed by the Debtors to the Purchasers, in the ordinary course of business, in a manner consistent with their prepetition practices and subject to the Debtors' full reservation of rights. "[T]he stay is not meant to be indefinite or absolute, and in appropriate instances, relief may be granted." *Kenneth G. Bricker, Ellen Bricker, Pamela J. Meier, Richard F. Monning, Linda B. Monning v. William F. Scalera (In re William F. Scalera)*, 521 B.R. 513, 516 (Bankr. W.D. Pa. 2014) (quoting *Izzarelli v. Rexene Products Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992)).

20. Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party-in-interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause . . . ." The Bankruptcy Code does not define the term "cause," and cause is a flexible concept, determined on a case-by-case basis after examining the totality of the circumstances. *See The Buncher Co.*

*v. Flabeg Solar US Corp.(In re Flabeg Solar US Corp.)*, 499 B.R. 475, 479 (Bankr. W.D. Pa. 2013) (citing *O'Neal Steel, Inc. v. Chatkin (In re Chatkin)*, 465 B.R. 54, 59 (Bankr. W.D. Pa. 2012)); *In re F-Squared Invest. Mgt., LLC*, 546 B.R. 538, 548 (Bankr. D. Del. 2016); *In re Abeinsa Holding, Inc.,* 2016 Bankr. LEXIS 3641, at *7 (Oct. 6, 2016); *In re Trump Entertainment Resorts, Inc.*, 526 B.R. 116, 120 (Bankr. D. Del. 2015). "The Bankruptcy Code gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case." *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) (citing *In re Atlantic Ambulance Assoc., Inc.*, 166 B.R. 613 (Bankr. E.D. Va. 1994)).

21. Cause exists here to modify the automatic stay. Netting amounts and obligations in these limited circumstances under the purchase and sale agreements is common and administratively important in the oil and gas industry generally, and prior to the Petition Date, the Purchasers have engaged in such netting of amounts and obligations in the ordinary course of business, pursuant to specific terms in their purchase and sale agreements with the Debtors. The Debtors need to continue these arrangements with the Purchasers and the Midstream-Related Parties, and by this Motion, the Debtors seek to provide clarity to the Purchasers and the Midstream-Related Parties that they can continue to conduct business as usual with the Debtors. Without this understanding and the Court's authority, the Purchasers and the Midstream-Related Parties may be worried about continuing to net obligations and may stop doing so, which would seriously disrupt the Debtors' operations and ability to market and transport their products. In the Debtors' business judgment, the stay modification is reasonable and fair under the circumstances of these Cases and will help facilitate a smooth transition for the Debtors into chapter 11. Accordingly, the Court should modify the automatic stay, to the extent applicable, to

allow the Purchasers to continue to abide by the terms of their purchase and sale agreements.

## REQUESTS FOR IMMEDIATE RELIEF AND WAIVER OF STAY

22. Pursuant to Bankruptcy Rules 6003(b) and 6004(h), the Debtors seek (a) immediate entry of an order granting the relief sought herein and (b) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition." Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." From this, courts have ruled that, where the failure to grant any such requested relief would result in immediate and irreparable harm to a debtor's estate, a court may allow a debtor to pay all or part of a claim that arose prepetition immediately.

23. As set forth above, the payment and/or honoring of the obligations under the Debtors' purchase and sale agreements with the Purchasers and the transportation and marketing agreements with the Midstream-Related Parties in the ordinary course of business is necessary to prevent immediate and irreparable damage to the Debtors' estates. Without the Purchasers' and the Midstream-Related Parties' continued confidence in and compliance with their agreements, the Debtors' ability to reorganize will be markedly more difficult. Accordingly, the Debtors submit that ample cause exists to justify (a) the immediate entry of an order granting the relief sought herein and (b) a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

**RESERVATION OF RIGHTS**

24. Nothing contained herein is intended to be or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights or any other party-in-interests' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute a claim under the Debtors' purchase and sale agreements, transportation agreements or marketing agreements; (e) permission to net amounts owed to the Debtors (i) in the absence of mutuality or (ii) unrelated to the specific terms of a purchase and sale agreement; or (f) the assumption of any executory contract or unexpired lease.

**NOTICE**

25. Notice of this Motion will be provided to: (a) the Office of the United States Trustee for the Western District of Pennsylvania (the "U.S. Trustee"); (b) the United States Attorney for the Western District of Pennsylvania; (c) those creditors holding the 30 largest unsecured claims against the Debtors; (d) Simpson Thacher & Bartlett LLP, as counsel to Angelo, Gordon Energy Servicer, LLC in its capacity as Administrative Agent and Collateral Agent for the Prepetition First Lien Credit Agreement; (e) Wilmington Savings Fund Society, FSB, as the indenture trustee for those certain 1.00%/8.00% Senior Secured Second Lien Notes due 2020 (the "Prepetition Second Lien Notes"); (f) Akin Gump Strauss Hauer & Feld LLP, as counsel to an ad hoc group of holders of the Prepetition Second Lien Notes (the "Ad Hoc Second Lien Group"); (g) BOKF, NA, as the indenture trustee for those certain 8.875% Senior Notes due 2020 and 6.250% Senior Notes due 2022; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; (j) the office of the attorney general for the states in which the Debtors operate; (k) the Banks; (l) BP; (m) TGT; and (n) all parties entitled to notice pursuant to the Local Rules. As this Motion is seeking "first day" relief, this Motion and any order entered

hereon will be served in accordance with the Local Rules. Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is necessary.

## **NO PRIOR REQUEST**

26. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Dated: May 18, 2018
(Pittsburgh, Pennsylvania)

Respectfully submitted,

*/s/ James D. Newell*
James D. Newell (PA 51337)
Timothy P. Palmer (PA 86165)
Tyler S. Dischinger (PA 314299)
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
Telephone: (412) 562-8800
Facsimile: (412) 562-1041
Email: james.newell@bipc.com
        timothy.palmer@bipc.com
        tyler.dischinger@bipc.com

- and -

Scott J. Greenberg
Michael J. Cohen
Anna Kordas
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: sgreenberg@jonesday.com
        mcohen@jonesday.com
        akordas@jonesday.com

- and -

Thomas A. Howley
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002-2712
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
Email: tahowley@jonesday.com

PROPOSED CO-COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION