## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| R.E. GAS DEVELOPMENT, LLC, *et al.*,[1] | : | Case No.  18-22032 (JAD) |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |
| R.E. GAS DEVELOPMENT, LLC, *et al.*, | : | |
| | : | |
| Movants, | : | |
| | : | |
| v. | : | |
| | : | |
| NO RESPONDENT, | : | |
| | : | |
| Respondent. | : | |
| | : | |

### DEBTORS' EMERGENCY MOTION FOR INTERIM AND
### FINAL ORDERS AUTHORIZING THE PAYMENT OF CERTAIN
### PREPETITION CLAIMS OF CERTAIN PREPETITION LIEN CLAIMANTS

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

move the Court (this "Motion"), pursuant to sections 105(a), 363 and 507(a) of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 9013-1 of the Local Bankruptcy Rules of

the U.S. Bankruptcy Court for the Western District of Pennsylvania (the "Local Rules"), for the

entry of interim and final orders, in substantially the forms attached hereto as Exhibit A (the

"Proposed Interim Order") and Exhibit B (the "Proposed Final Order"), (i) authorizing, but not

directing, the Debtors to pay the claims of certain prepetition lien claimants and (ii) granting

related relief, each subject to any order governing the use of cash collateral and approving debtor

---

[1]   The Debtors are the following four entities (the last four digits of their respective taxpayer identification
numbers follow in parentheses):  R.E. Gas Development, LLC (5422); Rex Energy Corporation (4402);
Rex Energy Operating Corp. (0390); and Rex Energy I, LLC (9799).  The address of each of the Debtors is
366 Walker Drive, State College, Pennsylvania 16801.

in possession facility (the "DIP Facility").[2]  In support of this Motion, the Debtors respectfully

represent as follows:

## JURISDICTION AND VENUE

1.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)  Venue for this matter is

proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.        General Background**

2.        On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing in

possession of their properties and are managing their business, as debtors in possession, pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code.

3.        Debtor R.E. Gas Development, LLC ("R.E. Gas") is a Delaware limited liability

company headquartered in State College, Pennsylvania.  Substantially all of the assets of R.E.

Gas are located in Pennsylvania.  Its parent entity is Rex Energy Corporation ("Rex Energy"), a

Delaware corporation.  Rex Energy was incorporated and became a public company in 2007.

Each of the other Debtors is a wholly-owned direct subsidiary of Rex Energy.  The Debtors are

independent oil and gas companies operating in the Appalachian Basin, engaged in the

acquisition, production, exploration and development of oil, natural gas and natural gas liquids.

The Debtors are focused on drilling and exploration activities in the Marcellus Shale, Utica Shale

and Upper Devonian Shale.

---

[2]        Under the DIP Facility, Angelo, Gordon Energy Servicer, LLC is the administrative and collateral agent for
the lender parties thereunder (the "DIP Agent").

4.      Additional information regarding the Debtors and these chapter 11 cases (these "Cases"), including the Debtors' business, corporate structure, financial condition and reasons for and objectives of these Cases, is set forth in the *Declaration of Thomas C. Stabley in Support of First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

**B.      Oil Patch Vendors**

5.      In connection with the day-to-day operation of their businesses, the Debtors employ the services of various parties (the "Oil Patch Vendors") for the performance of construction, maintenance and repair services at the Debtors' oil and gas wells.  The Oil Patch Vendors are critical components of the Debtors' operations.  Many of the Oil Patch Vendors provide essential services to the Debtors as part of the Debtors' efforts to drill wells and to maximize production at their operating wells.  The work being performed in the fields is, in many instances, highly technical and requires specialized services.  Only a limited number of construction, maintenance and engineering service providers are equipped and available to perform these services.  Moreover, if one service provider decides to stop performing, then the entire operation at that particular site will stop.  Replacing that provider will be nearly impossible given the current state of the market and the waitlist attendant to booking professionals to perform these services.

6.      Under state law, certain of the Oil Patch Vendors to whom the Debtors owe money (the "Lien Claimants") may be entitled to assert mechanics' or other liens (collectively, the "Liens")[3] against the Debtors' property for amounts owed ("Lien Claims"), notwithstanding

---

[3]      The majority of the Lien Claimants are performing work on or providing materials for the Debtors' projects in Ohio and Pennsylvania.  Ohio law and Pennsylvania law give certain parties mechanics' liens for amounts owed in connection with the performance of work or furnishing of materials.  *See* OHIO REV.

[Footnote continued on next page]

the automatic stay under section 362 of the Bankruptcy Code.  *See* 11 U.S.C. § 362(a)(3) (the act

of perfecting such a lien, to the extent consistent with section 546(b) of the Bankruptcy Code, is

expressly excluded from the automatic stay); 11 U.S.C. § 546(b) (a debtor's lien avoidance

powers "are subject to any generally applicable law that . . . permits perfection of an interest in

property to be effective against an entity that acquires rights in such property before the date of

perfection . . . .").

7.      As of the Petition Date, the Debtors estimate that they owe or will owe

approximately $35,244,441.00 related to the prepetition period to the Lien Claimants who are

critical to their ongoing operations.  The majority of this amount is related to recent drilling and

completion activity in accordance with the Debtors' business plan.  The Debtors believe that

certain of the Lien Claimants signed contracts by which they purportedly waived their rights to

file liens against the Debtors and their property; however, while the Debtors reserve all rights

with respect to those waivers, litigating this issue would inevitably disrupt the Debtors'

operations, distract the Debtors' management during this critical juncture in these Cases and

force the Debtors to incur expenses that may exceed the amount of the particular Lien Claims.

8.      Accordingly, absent payment to the Lien Claimants, the Debtors' operations will

come to a standstill and title to the Debtors' most valuable assets could potentially become

clouded with liens; however, before paying any of the Lien Claims, the Debtors propose to

---

CODE ANN. § 1311.021(A) (giving every person who, performs labor or work or furnishes materials which furthers the production of oil and gas, a lien to secure payment due for such labor or work or furnishing of materials, provided certain other conditions are satisfied to perfect the lien); 49 P.S. § 1301(a) (giving contractors, that provide labor or materials for the erection or construction or the alteration or repair of an improvement, a lien to secure payment due for such labor or materials, provided certain other conditions are satisfied to perfect the lien).  Generally, under both Ohio law and Pennsylvania law, the mechanics' liens date back to the day visible work began or materials were provided at the site.  OHIO REV. CODE ANN. § 1311.021(C)(4); 49 P.S. § 1508(a); *see also In re Skyline Properties, Inc.*, 134 B.R. 830, 835 (Bankr. W.D. Pa. 1992) (explaining that, under Pennsylvania law, the lien of a claim takes effect and has priority "as of the date of the visible commencement upon the ground of the work of erecting or constructing the improvement.").

evaluate all payment requests and negotiate the best possible mutual resolution for the benefit of these estates.

## RELIEF REQUESTED

9.      The Debtors request entry of orders, substantially in the forms of the Proposed Interim Order and the Proposed Final Order, (i) authorizing, but not directing, the Debtors to pay the claims of certain prepetition lien claimants; and (ii) granting certain related relief, in each case subject to any order governing the use of cash collateral and any order approving the DIP Facility.  The Debtors also request that all applicable banks and other financial institutions receive, process, honor and pay all related checks and electronic payment requests relating to payment of the Lien Claims, whether such checks or electronic payment requests were presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts.  Finally, the Debtors request that the Proposed Interim Order and the Proposed Final Order be enforceable immediately upon entry.

## BASIS FOR RELIEF

**A.      Numerous Sections of the Bankruptcy Code and the Doctrine of Necessity Authorize the Debtors to Satisfy the Lien Claims and the Other Amounts Requested Herein**

10.      Payment of the Lien Claims is appropriate pursuant to sections 105(a), 363, 507 and 541 of the Bankruptcy Code and case law in this district and elsewhere.  Section 363(b)(1) of the Bankruptcy Code provides:  "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary

> or appropriate to enforce or implement court orders or rules, or to
> prevent the abuse of process.

11 U.S.C. § 105(a).  Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad

authority and discretion to enforce the provisions of the Bankruptcy Code under equitable

common law principles.

11.     Courts have recognized consistently "the existence of the judicial power to

authorize a debtor in a reorganization case to pay prepetition claims where such payment is

essential to the continued operations of the debtor."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174,

176 (Bankr. S.D.N.Y. 1989); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92

(Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a

showing that the payment is "essential to the continued operation of the business") (citations

omitted).  The Supreme Court first articulated the equitable common law principle referred to as

the "doctrine of necessity" over 125 years ago in *Miltenberger v. Logansport, C. & S.W.R. Co.*,

106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882).  "The Supreme Court, the Third Circuit and the

District of Delaware all recognize the court's power to authorize payment of pre-petition claims

when such payment is necessary for the debtor's survival during chapter 11."  *In re Just for Feet,

Inc.*, 242 B.R. 821, 825 (D. Del. 1999).  "The necessity of payment doctrine recognizes that

paying certain pre-petition claims may be necessary to realize the goal of chapter 11 -- a

successful reorganization."  *Id.* at 825-26.

12.     Under the "doctrine of necessity," a bankruptcy court may exercise its equitable

power to authorize a debtor to pay critical prepetition claims, even though such payment is not

explicitly authorized under the Bankruptcy Code.  *See In re Columbia Gas Sys., Inc.*, 136 B.R.

930, 939 (Bankr. D. Del. 1992) (citing *In re Lehigh & New England Rwy. Co.*, 657 F.2d 570, 581

(3d Cir. 1981)) (recognizing that "if payment of a pre-petition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'").

13.      The bankruptcy court's exercise of authority under the "doctrine of necessity" is appropriate for carrying out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code.  These sections collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business.  *See, e.g.*, *In re Shubh Hotels Pittsburgh, LLC*, 439 B.R. 637, 639 (Bankr. W.D. Pa. 2010) ("Courts have held that in determining whether to authorize a debtor's use, sale or lease of property of the estate under Section 363(b)(1), the debtor-in-possession is required to show that a sound business purpose justifies the debtor's contemplated actions.").  Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if such is necessary for the debtor to perform its duty.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

14.      This Motion satisfies the foregoing criteria.  The relief sought herein is necessary in order for the Debtors to reorganize, and payment of the Lien Claims is appropriate as a reasonable exercise of the Debtors' business judgment.  It is essential that the Debtors be permitted to pay immediately Lien Claimants to insure that the workflow at the Debtors' sites remains constant and uninterrupted.  At this early juncture of these Cases, the Debtors cannot afford material disruptions of their business operations or present anything less than a "business as usual" appearance to their business partners and customers.  The relief requested herein will

also avoid the situation where a large number of liens are filed against the Debtors' oil and gas leases, which would complicate a sale, transfer or reorganization.

15.     Additionally, the prepetition amounts owed to most of the Lien Claimants are less than the value of the property securing those claims.  Thus, many of the Lien Claimants may allege that they are fully secured creditors holding liens senior in priority to the Debtors' prepetition lenders' liens and the Debtors' noteholders' liens.  In general, pursuant to section 506 of the Bankruptcy Code, fully secured creditors are entitled to receive (a) payment in full of their prepetition claims and (b) postpetition interest accruing on such claims up to the value of the collateral.  Consequently, to the extent the Lien Claimants are correct with respect to their assertions, payment of their prepetition claims now will (a) in most cases give the Lien Claimants no more than they otherwise would be entitled to receive on account of their claims in the chapter 11 cases and (b) save the Debtors the cost of interest that otherwise may accrue on those claims.  Accordingly, the Debtors' general unsecured creditors will not be prejudiced by the relief sought herein.

## B.     Process for Paying the Lien Claims

16.     The Debtors do not intend to pay all of the Lien Claimants indiscriminately on a blanket basis.  The Debtors will exercise their discretion in this process and attempt to reach a mutually beneficial resolution with each Oil Patch Vendor prior to payment.  Additionally, the Debtors may require, as a condition to payment, that each Lien Claimant agree to (a) continue to perform services for or provide materials to the Debtors; (b) release any liens it may have; and (c) on a prospective basis, provide credit, pricing or payment terms equal to, or better than, those provided to the Debtors prepetition.  By reserving the right to require, as a condition to any payment on account of any prepetition claim, that the Lien Claimants agree to release any liens and provide credit terms equivalent to those provided prepetition, the Debtors anticipate that they

will be able to enhance their liquidity during these Cases to the benefit of their estates and

creditors.

      **C.**    **The Court Should Authorize All Applicable Banks and Financial Institutions to Honor and Pay Checks in Connection with the Obligations**

    17.    In addition, by this Motion, the Debtors request that all applicable banks and other

financial institutions (collectively, the "Banks") be authorized, when requested by the Debtors, to

receive, process, honor and pay any and all checks presented for payment of, and to honor all

fund transfer requests made by the Debtors related to, the Lien Claims, whether such checks

were presented or fund transfer requests were submitted prior to or after the Petition Date,

provided that sufficient funds are available in the applicable accounts to make the payments.

The Debtors represent that these checks are drawn on identifiable disbursement accounts and can

be readily identified as relating directly to the authorized payment of the Lien Claims.

Accordingly, the Debtors believe that checks other than those relating to authorized payments

will not be honored inadvertently.

      **D.**    **Other Courts Have Granted Similar Relief**

    18.    Courts in this district and other districts in the Third Circuit commonly authorize

the payment of claims of service or materials providers that may have liens on a debtor's assets.

*See, e.g.*, *In re rue21, inc.*, No. 17-22045 (GLT) (Docket No. 514) (Bankr. W.D. Pa. June 12,

2017); *In re Swift Energy Company*, No. 15-12670 (MFW) (Docket No. 212) (Bankr. D. Del.

Feb. 1, 2016); *In re Molycorp, Inc.*, No. 15-11357 (CSS) (Docket No. 84) (Bankr. D. Del. June

26, 2015); *In re Quicksilver Resources Inc.*, No. 15-10585 (LSS) (Docket No. 199) (Bankr.

D. Del. Apr. 14, 2015); *In re RadioShack Corp.*, No. 15-10197 (BLS) (Docket No. 162) (Bankr.

D. Del. Feb. 9, 2015).[4]

## **REQUESTS FOR IMMEDIATE RELIEF AND WAIVER OF STAY**

19.     Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), the Debtors seek (i) immediate entry of an order granting

the Debtors the authority to pay the Lien Claims and (ii) a waiver of any stay of the effectiveness

of such an order.  Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent

that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21

days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a

claim that arose before the filing of the petition."  Accordingly, where the failure to grant any

such requested relief would result in immediate and irreparable harm to the Debtors' estates, the

Court may now authorize the Debtors to pay all or part of a claim that arose before the Petition

Date at this time.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or

lease of property other than cash collateral is stayed until the expiration of 14 days after entry of

the order, unless the court orders otherwise."

20.     As set forth above and in the First Day Declaration, payment of the Lien Claims is

necessary to prevent immediate and irreparable damage to the Debtors' operations and ability to

reorganize.  Accordingly, the Debtors submit that ample cause exists to justify (i) the immediate

entry of an order granting the relief sought herein and (ii) a waiver of the 14-day stay imposed by

Bankruptcy Rule 6004(h), to the extent that it applies.

---

[4]     Because of their voluminous nature, the orders cited herein are not attached to this Motion.  Copies of these orders, however, are available on request to the Debtors' proposed chapter 11 counsel.

## RESERVATION OF RIGHTS

21.     Nothing contained herein is intended or shall be construed as:  (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights or any other party-in-interests' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim against the Debtors is a Lien Claim; or (e) the assumption of any executory contract or unexpired lease.

## NOTICE

22.     Notice of this Motion will be provided to:  (a) the Office of the United States Trustee for the Western District of Pennsylvania (the "U.S. Trustee"); (b) the United States Attorney for the Western District of Pennsylvania; (c) those creditors holding the 30 largest unsecured claims against the Debtors; (d) Simpson Thacher & Bartlett LLP, as counsel to Angelo, Gordon Energy Servicer, LLC in its capacity as Administrative Agent and Collateral Agent for the Prepetition First Lien Credit Agreement; (e) Wilmington Savings Fund Society, FSB, as the indenture trustee for those certain 1.00%/8.00% Senior Secured Prepetition Second Lien Notes due 2020 (the "Prepetition Second Lien Notes"); (f) Akin Gump Strauss Hauer & Feld LLP, as counsel to an ad hoc group of holders of the Prepetition Second Lien Notes (the "Ad Hoc Second Lien Group"); (g) BOKF, NA, as the indenture trustee for those certain 8.875% Senior Notes due 2020 and 6.250% Senior Notes due 2022; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; (j) the office of the attorney general for the states in which the Debtors operate; (k) the Banks; and (l) all parties entitled to notice pursuant to the Local Rules.  As this Motion is seeking "first day" relief, this Motion and any order entered hereon will be served in accordance with the Local Rules.  Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is necessary.

## **NO PRIOR REQUEST**

23.     No prior request for the relief sought herein has been made to this Court or any

other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Interim

Order and the Proposed Final Order and grant such other and further relief as may be

appropriate.

Dated:  May 18, 2018
(Pittsburgh, Pennsylvania)

Respectfully submitted,

*/s/ James D. Newell*

James D. Newell (PA 51337)
Timothy P. Palmer (PA 86165)
Tyler S. Dischinger (PA 314299)
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
Telephone:  (412) 562-8800
Facsimile:  (412) 562-1041
Email:  james.newell@bipc.com
           timothy.palmer@bipc.com
           tyler.dischinger@bipc.com

- and -

Scott J. Greenberg
Michael J. Cohen
Anna Kordas
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Email:  sgreenberg@jonesday.com
           mcohen@jonesday.com
           akordas@jonesday.com

- and -

Thomas A. Howley
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002-2712
Telephone:  (832) 239-3939
Facsimile:  (832) 239-3600
Email:  tahowley@jonesday.com

PROPOSED CO-COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION