## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| R.E. GAS DEVELOPMENT, LLC, *et al.*,[1] | : | Case No.  18-22032(JAD) |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |
| R.E. GAS DEVELOPMENT, LLC, *et al.*, | : | |
| | : | |
| Movants, | : | |
| | : | |
| v. | : | |
| | : | |
| NO RESPONDENT, | : | |
| | : | |
| Respondent. | : | |
| | : | |

### DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO PAY PREPETITION EMPLOYEE WAGES, BENEFITS AND RELATED ITEMS

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

move the Court (this "Motion"), pursuant to sections 105(a), 363, 507(a)(4), 507(a)(5), 541(b)(7)

and 541(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1 of the

Local Bankruptcy Rules of the U.S. Bankruptcy Court for the Western District of Pennsylvania

(the "Local Rules"), for the entry of interim and final orders, in substantially the forms attached

as Exhibit A (the "Proposed Interim Order") and Exhibit B (the "Proposed Final Order"),

authorizing, but not directing, the Debtors, (i) to pay and/or honor (a) certain prepetition

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  R.E. Gas Development, LLC (5422); Rex Energy Corporation (4402); Rex Energy Operating Corp. (0390); and Rex Energy I, LLC (9799).  The address of each of the Debtors is 366 Walker Drive, State College, Pennsylvania 16801.

1

employee wages, salaries, overtime pay and other accrued compensation (collectively,

the "Prepetition Compensation"), as well as related Prepetition Deductions (as defined below);

(b) obligations related to the Debtors' bonus programs; (c) certain obligations related to Paid

Time Off (as defined below); (d) unreimbursed and unpaid prepetition business expenses

(collectively, the "Prepetition Business Expenses"); (e) prepetition contributions to, and benefits

under, employee benefit plans and programs and related processing costs, including the Debtors'

401(k) program, and the COBRA Benefits (as defined below); (f) certain prepetition severance-

related obligations; and (g) all costs and expenses incident to the foregoing payments and

contributions, including payroll-related taxes and related processing and administration costs

(the "Prepetition Processing Costs"); and (ii) to continue, on a postpetition basis, the Continued

Benefits (as defined below), each subject to any order governing the use of cash collateral and

approving debtor in possession financing.  In support of this Motion, the Debtors respectfully

represent as follows:

<strong>JURISDICTION AND VENUE</strong>

1.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is

proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

<strong>BACKGROUND</strong>

**A.    General Background**

2.    On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing in

possession of their properties and are managing their business, as debtors in possession, pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code.

2

3.       Debtor R.E. Gas Development, LLC ("R.E. Gas") is a Delaware limited liability company headquartered in State College, Pennsylvania.  Substantially all of the assets of R.E. Gas are located in Pennsylvania.  Its parent entity is Rex Energy Corporation ("Rex Energy"), a Delaware corporation.  Rex Energy was incorporated and became a public company in 2007.  Each of the other Debtors is a wholly-owned direct subsidiary of Rex Energy.  The Debtors are independent oil and gas companies operating in the Appalachian Basin, engaged in the acquisition, production, exploration and development of oil, natural gas and natural gas liquids.  The Debtors are focused on drilling and exploration activities in the Marcellus Shale, Utica Shale and Upper Devonian Shale.

4.       Additional information regarding the Debtors and these chapter 11 cases (these "Cases"), including the Debtors' business, corporate structure, financial condition and reasons for and objectives of these Cases, is set forth in the *Declaration of Thomas C. Stabley in Support of First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

### B.       Compensation and Payroll Deductions

5.       As of the Petition Date, the Debtors have 102 full-time employees and 1 part-time employee.  Of the Debtors' full-time employees, 27 are hourly employees and 75 are salaried employees.  The Debtors' part-time employee is an hourly employee.  The Debtors' hourly employees are eligible to receive overtime pay at 150 percent of their hourly rate.  All of the Debtors' full-time and part-time employees are paid bi-weekly, and payroll is processed by ADP, LLC ("ADP").[2]

---

[2]       Prior to the Petition Date, certain of the Debtors' employees were paid weekly.  Following the Petition Date, the Debtors will pay all of their full-time and part-time employees biweekly.

6.      The Debtors believe that certain of their employees may be owed or have accrued various sums related to the Prepetition Compensation.  These amounts remained unpaid as of the Petition Date because, among other reasons, (a) checks previously issued on account of such obligations may not have been presented for payment or may not have cleared the banking system prior to the Petition Date; (b) amounts related to prepetition services, which may have accrued in whole or in part, have not yet become due and payable by the Debtors; and (c) amounts deducted from employee paychecks were not then due to be paid over to the intended recipient or account, including deductions taken from employees' paychecks for the purpose of making payments (i) on behalf of the employees for or with respect to, among other things, the Debtors' employee benefits programs, garnishments or amounts due to third parties, (ii) on account of various federal, state or local income, the Federal Insurance Contribution Act, Medicare, state disability, workers' compensation and other taxes for remittance to the appropriate federal, state or local taxing authority and (iii) with respect to employee contributions to the Debtors' 401(k) plan ((i) through (iii) collectively, the "Prepetition Deductions").

7.      By this Motion, the Debtors seek authority to pay all of the Prepetition Compensation and the Prepetition Deductions, which the Debtors estimate total $91,376.00 and $49,857.00, respectively, as of the Petition Date.

### C.      Annual Incentives Program

8.      The Debtors maintain formal bonus programs for both non-insider and insider employees (together, the "Annual Incentives Program").  Under the Annual Incentives Program, non-insider and insider employees have the opportunity to earn incentive payments based on certain criteria, including (a) production levels, (b) budget compliance, (c) various health, safety and environmental factors and (d) personal employee performance (the "Metrics").  Payments to

4

non-insider employees who meet the criteria under the Annual Incentives Program are made on

August 15 and at the end of the calendar year.  Payments to insider employees who meet the

criteria under the Annual Incentives Program are made at the end of the calendar year.

9.      Historically, the Debtors have required the satisfaction of the Metrics (or similar

criteria) in order for their employees to earn payments under the Annual Incentives Program.  In

2017, however, the Debtors' management modified the program to focus on retention, and for

their employees' work in 2017, the Debtors remitted approximately $1.7 million in payments

under the Annual Incentives Program.  In 2014, the Annual Incentives Program was based on the

Metrics, and non-insider employees earned approximately $2.11 million.  In 2015, the Metrics

were not achieved, and no payments were made on account of the Annual Incentives Program.

In 2016, the Annual Incentives Program was based on the Metrics, and non-insider employees

earned approximately $528,961.00.

10.     By this Motion and pursuant to the entry of a final order, the Debtors seek

approval of their typical Annual Incentives Program for non-insider employees, which relies on

the satisfaction of the Metrics.  If the Metrics are satisfied at the highest levels, then the non-

insider employees would earn approximately $2.335 million.  As of the Petition Date, the

Debtors do not owe any amounts under the Annual Incentives Program.  By this Motion and

pursuant to the entry of a final order, the Debtors request authority, but not direction, to continue

and honor the Annual Incentives Program exclusively with respect to their non-insider

employees, on a postpetition basis, in the ordinary course of business.

11.     Additionally, pursuant to the entry of a final order, the Debtors seek authority to

pay out amounts that non-insider employees have earned under the Annual Incentives Program

earlier than the designated final pay date should any employees be terminated without cause after

5

August 15, 2018 but before the final designated pay date at the end of the calendar year.  The

Debtors' employees are the core of the businesses and incentivizing these non-insider employees

to remain in their current positions will boost employee morale during this uncertain time, ensure

a smooth transition into these Cases and maximize the value of the Debtors' estates.

### D.    Vacation Days and Other Paid Time Off

12.    The Debtors provide certain employees with various types of paid time off

(the "Paid Time Off") each year, including (a) a number of paid vacation days ("Vacation Days")

that employees accrue over time, (b) four personal days each year, which employees may use for

various purposes (*e.g.*, illness, appointments, jury duty, funerals, personal business, etc.) and

(c) nine paid holidays.  By this Motion, the Debtors seek to allow employees to utilize their Paid

Time Off (including Vacation Days accrued as of the Petition Date) on a go-forward basis.  For

the avoidance of doubt, at this time the Debtors do not seek authority to pay, upon an employee's

future termination, the value of any such Vacation Days accrued as of the Petition Date.

### E.    Business Expenses

13.    Certain of the Debtors' employees have company corporate cards issued by Bank

of America ("Corporate Cards"), and the Debtors pay the bills under the Corporate Cards each

month.  Employees are required to use the Debtors' internal travel coordinator, who is

responsible for making reservations for all of the Debtors' employees' business travel, including

airfare, hotel accommodations, rental cars and meal planning.  The internal travel coordinator

charges all business travel expenses to a Corporate Card.  Additionally, employees are expected

to charge all business expenses to their Corporate Cards and retain and submit all related receipts

to the Company.  If an employee charges business expenses to anything other than a Corporate

Card, then the employee must submit all related receipts and an expense report within two weeks

6

of incurring the expense in order to obtain reimbursement.  Generally, the Debtors reimburse no more than $25,000.00 in business expenses (including payment of Corporate Card bills) on a monthly basis.

14.     The Debtors respectfully request authority to pay all Prepetition Business Expenses in the ordinary course of their business.  It is difficult for the Debtors to determine the exact amount of Prepetition Business Expenses that is outstanding because, among other things, employees are not required to submit expense reports until fourteen days after incurring an expense.  Nevertheless, the Debtors estimate that their obligations for Prepetition Business Expenses as of the Petition Date total approximately $24,416.00.

### F.     The Benefits Programs

15.     The Debtors maintain various programs, including, among others:  (a) health, dental and vision benefits, life insurance, AD&D benefits and disability; (b) health savings accounts; (c) severance program for certain employees and COBRA benefits; (d) 401(k) retirement plans; and (e) various other benefits (collectively, the "Benefits Programs").

16.     Certain prepetition benefits under the Benefits Programs have accrued but remained unpaid as of the Petition Date because such obligations under the Benefits Programs have accrued either in whole, or in part, prior to the Petition Date but will not become payable in the ordinary course of the Debtors' business until after the Petition Date.  As set forth in greater detail below, the Debtors estimate that the amount of these unpaid prepetition benefits is approximately $85,971.00, as of the Petition Date.[3]  The Debtors request authority to honor their

---

[3]     The descriptions of the Debtors' benefits programs contained herein are provided for convenience only and are qualified in all respects by the actual terms of such programs.  Nothing contained herein shall have the effect of modifying the terms of the Benefits Programs or altering any party's rights and obligations thereunder.  Additionally, the Debtors are seeking interim relief with respect to the COBRA Benefits (as defined below) but are not seeking interim relief with respect to the Severance Program (as defined below).

obligations under the Benefits Programs (including paying these prepetition amounts) and to continue the Benefits Programs in the ordinary course of business.

### 1.      Health/Other Insurance Benefits Programs

(a)      Health Insurance

17.      The Debtors provide health insurance with a prescription drug program to employees (and certain of their eligible family members) through third-party insurer Aetna (the "Health Plan").  Under the Health Plan, employees and the Debtors pay a monthly premium, with the Debtors paying approximately 95 percent thereof.  The Health Plan is a high-deductible plan, and insured employees have the option of contributing to a health savings account ("HSA").  The HSAs are maintained at Optum Bank.

18.      The Debtors estimate that, as of the Petition Date, their accrued and unpaid obligations on account of the Health Plan total approximately $42,789.00.  By this Motion, the Debtors seek authority, but not direction, to pay such amount.

19.      The Debtors began providing the Health Plan to their employees on January 1, 2018.  Prior to January 1, 2018, the Debtors offered only a self-funded health insurance plan (the "Self-Funded Health Plan).  Capital BlueCross administered the Self-Funded Health Plan.  The Debtors no longer offer to employees or maintain the Self-Funded Health Plan; however, the Debtors are obligated to pay all outstanding claims pursuant to the Self-Funded Health Plan as they come due.

20.      The Debtors estimate that, as of the Petition Date, their accrued and unpaid obligations on account of the Self-Funded Health Plan total approximately $17,811.00.  By this Motion, the Debtors seek authority, but not direction, to pay such amount.

8

(b)     Dental Benefits

21.     The Debtors offer a self-funded dental benefits plan to employees (and their eligible family members) (the "Dental Plan").  Delta Dental provides administrative services for the Dental Plan.  Under the Dental Plan, employees pay a monthly contribution and a deductible, and the Debtors pay each claim less the applicable deductible when due (capped at $2,000 per employee annually).

22.     The Debtors estimate that, as of the Petition Date, their accrued and unpaid obligations on account of the Dental Plan total approximately $3,522.00.  By this Motion, the Debtors seek authority, but not direction, to pay such amount.

(c)     Vision Benefits

23.     The Debtors offer a self-funded vision benefits plan to employees (and their eligible family members) (the "Vision Plan").  National Vision Administrators provides administrative services for the Vision Plan.  Under the Vision Plan, employees pay a monthly contribution and certain co-pays, and the Debtors pay each claim when due.

24.     The Debtors estimate that, as of the Petition Date, their accrued and unpaid obligations on account of the Vision Plan total approximately $632.00.  By this Motion, the Debtors seek authority, but not direction, to pay such amount.

(d)     Other Benefits Paid for in Full by the Debtors[4]

25.     The Debtors provide (a) group life insurance, accidental death and dismemberment benefits and short-term and long-term disability to all employees through The Standard and (b) an executive long-term disability plan to certain employees with an annual

---

[4]     The Debtors maintain workers' compensation insurance, and that insurance policy is addressed in the *Debtors' Emergency Motion for an Order Authorizing the Debtors to Continue Their Insurance Programs and Pay Related Obligations*, filed contemporaneously herewith.

salary in excess of $200,000 through Unum ((a) and (b) together, the "Other Benefits Plans").

Under the Other Benefits Plans, the Debtors pay the premiums and other amounts owed to The

Standard and Unum.  The Debtors pay premiums to Unum one month in advance, and no

prepetition amounts are due under the executive long-term disability plan.

26.    The Debtors estimate that, as of the Petition Date, their accrued and unpaid

obligations on account of the Other Benefits Plans total approximately $5,807.00.  By this

Motion, the Debtors seek authority, but not direction, to pay such amount.

(e)    Other Benefits Paid for in Full by the Employees

27.    The Debtors offer other benefits, which employees pay for in full, such as

voluntary employee, spouse and child life insurance (the "Employee-Paid Benefits").  The

Debtors do no pay any amounts under the Employee-Paid Benefits.

## 2.    Severance and COBRA Benefits

28.    Historically, the Debtors have maintained a severance program (the "Severance

Program")[5] for certain executive employees whose employment is terminated as a result of

(a) the elimination of the employee's position, (b) a restructuring of the company or (c) a

reduction in the Debtors' workforce.  In order to receive severance benefits, the terminated

employee must execute a separation agreement that includes a full and complete release of the

Debtors.  The severance benefits are based on the specific position held by the terminated

employee but generally include a salary equal to the terminated employee's monthly base salary

---

[5]    In addition to the Severance Program, the Debtors have executed "Change in Control Agreements" with
certain of their employees.  Each Change of Control Agreement provides specific severance benefits in the
event the employee is terminated as a result of certain reasons relating to a change in the ownership of Rex
Energy.  By this Motion, the Debtors are not seeking any relief related to the Change in Control
Agreements but reserve all of their rights with respect to such agreements.

for a period of three to nine months and the option to elect to receive the COBRA Benefits (as

defined below).

29.     Pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 (as

amended, "COBRA"), the Debtors offer eligible former employees (regardless of participation in

the Severance Program) the option to elect to continue insurance coverage under certain of the

insurance plans maintained by the Debtors (the "COBRA Benefits").  The Debtors initially pay

the premiums owed to the insurers for the former employees who elect to receive the COBRA

Benefits, and the former employees reimburse the Debtors for 100 percent of the premiums.

Discovery administers the COBRA Benefits.

30.     As of Petition Date, one former employee participates in the Severance Program

and elects to receive the COBRA Benefits.  Under the Severance Program, the former employee

is entitled to severance pay of $13,845.60 bi-weekly, with the final payment due on November 2,

2018.  The COBRA Benefits for the former employee total approximately $1,600.00 each

month, and the former employee reimburses the Debtors in full for this amount.  As of the

Petition Date, the Debtors owe $5,539.00 in accrued and unpaid obligations under the Severance

Program and $924.00 relating to the COBRA Benefits.

31.     Pursuant to this Motion, the Debtors are seeking authority, but not direction, to

pay all prepetition obligations relating to the COBRA Benefits and to continue to pay all

obligations relating to the COBRA Benefits on a postpetition basis, in the ordinary course of

business.  Additionally, pursuant to this Motion and subject to the entry of the Proposed Final

Order, the Debtors are seeking authority, but not direction, to pay all prepetition obligations due

11

under the Severance Program and to continue the Severance Program on a postpetition basis, in the ordinary course of business.[6]

### 3.    401(k) Program

32.    The Debtors maintain defined contribution plans (collectively, the "401(k) Program") for the benefit of eligible employees.  American Funds administers the 401(k) Program, and Capital Bank and Trust is the trustee for the 401(k) Program.

33.    Eligible employees may elect to contribute certain of their gross earnings to the 401(k) Program, subject to certain statutory limitations.  In addition, the Debtors make matching contributions, up to a maximum of 2.5 percent of eligible compensation for each participating employee.  The Debtors estimate that they owe approximately $3,305.00 in matching contributions for the 401(k) Program as of the Petition Date.

34.    The Debtors request authority, but not direction, to honor their obligations under the 401(k) Program and to maintain the 401(k) Program on a postpetition basis, in the ordinary course of business.

### 4.    Other Benefits

35.    The Debtors provide monthly allowances to certain employees for vehicle, mobile phone and iPad expenses.  Six employees receive vehicle allowances each month.  Eighty-six employees receive cell phone allowances each month, and five of those eighty-six employees receive iPad allowances each month.  The Debtors estimate that, as of the Petition Date, they owe approximately $5,647.00 with respect to these benefits.

---

[6]    For the avoidance of doubt, the Debtors are not seeking any interim relief with respect to the Severance Program.

36.     The Debtors request authority, but not direction, to honor their obligations under these allowances and to maintain these allowances on a postpetition basis, in the ordinary course of business.

**G.     Costs and Expenses Incident to the Foregoing**

37.     The Prepetition Processing Costs include (a) processing costs, (b) the employer portion of payroll-related taxes and (c) accrued but unpaid prepetition charges for administration of the Prepetition Compensation, Prepetition Deductions and Benefits Programs, including, but not limited to, payments owed to (i) ADP for payroll processing services; (ii) Aetna for services in connection with the Health Plan; (iii) Capital BlueCross for services in connection with the Self-Funded Health Plan; (iv) Optum Bank for servicing the HSAs; (v) Delta Dental for administering the Dental Plan; (vi) National Vision Administrators for administering the Vision Plan; (vii) The Standard and Unum for services with respect to the Other Benefits Plans; (viii) Discovery for administering the COBRA Benefits; and (ix) American Funds for services with respect to the 401(k) Program.  The Debtors estimate that the aggregate amount of accrued but unpaid Prepetition Processing Costs, as of Petition Date, is approximately $20,435.00. Payment of the Prepetition Processing Costs is necessary because the failure to pay those amounts might cause a disruption in the services provided by third-parties with respect to the Prepetition Compensation, the Prepetition Deductions and the Benefits Programs, to the ultimate detriment of the Debtors' employees.  By paying the Prepetition Processing Costs, the Debtors seek to avoid disruptions of such services and ensure that their employees obtain all compensation and benefits without interruption.  Accordingly, the Debtors seek authorization to pay all accrued and unpaid Prepetition Processing Costs and to continue to pay postpetition amounts due in the ordinary course of business.

13

## RELIEF REQUESTED

38.     The Debtors request entry of orders, substantially in the form of the Proposed

Interim Order and the Proposed Final Order, authorizing, but not directing them (a) to pay

prepetition amounts owing on account of, and/or honor prepetition obligations in respect of,

(i) the Prepetition Compensation and the Prepetition Deductions; (ii) the Annual Incentives

Program with respect to non-insider employees only; (iii) Paid Time Off; (iv) the Prepetition

Business Expenses; (v) the Benefits Programs; and (vi) the Prepetition Processing Costs

(collectively, (i) through (vi), the "Employee Obligations"); and (b) to continue, on a postpetition

basis, the Annual Incentives Program (with respect to non-insider employees only) and the

Benefits Programs (together, the "Continued Benefits"), in the ordinary course of business, in

each case subject to any order governing the use of cash collateral and any order approving

debtor in possession financing.  The Debtors also request that all applicable banks and other

financial institutions receive, process, honor and pay all related checks and electronic payment

requests, whether such checks or electronic payment requests were presented before or after the

Petition Date, provided that sufficient funds are on deposit in the applicable accounts, relating to

the Employee Obligations.  Finally, the Debtors request that the Proposed Interim Order and the

Proposed Final Order be enforceable immediately upon entry.

## BASIS FOR RELIEF

39.     It is in the best interest of the Debtors' estates that all of the Employee Obligations

be satisfied in full.  It is also in the best interest of the Debtors' estates that they be allowed to

maintain the Continued Benefits in the ordinary course of business.  The Court's authority to

approve the satisfaction of prepetition obligations is based on the Bankruptcy Code and the

common law "doctrine of necessity."  The Court's authority to permit the Debtors to maintain the

14

Continued Benefits derives from the "doctrine of necessity" and is authorized pursuant to section 363(c) of the Bankruptcy Code.

>    **A.    Numerous Sections of the Bankruptcy Code and the Doctrine of Necessity Permit the Debtors to Preserve the Value of the Estates by Satisfying the Employee Obligations and the Other Amounts Requested Herein**

40.    At least five Bankruptcy Code provisions support the satisfaction of the Employee Obligations and the other prepetition amounts requested herein:  (a) under section 507(a)(4), prepetition claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual" are entitled to priority claim status, (b) under section 507(a)(5), unsecured claims for contributions to an employee benefit plan are entitled to priority claim status if certain conditions are met, (c) under section 541(d), property of the estate includes only property for which the debtor holds "legal title and not an equitable interest," (d) section 105(a) permits a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and (e) section 363(b)(1) provides that after notice and a hearing, and based on a "sound business purpose," a debtor may "use, sell, or lease, other than in the ordinary course of business, property of the estate."  *See In re Shubh Hotels Pittsburgh, LLC*, 439 B.R. 637, 639 (Bankr. W.D. Pa. 2010) ("Courts have held that in determining whether to authorize a debtor's use, sale or lease of property of the estate under Section 363(b)(1), the debtor-in-possession is required to show that a sound business purpose justifies the debtor's contemplated actions."); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *In re Filene's Basement, LLC*, No. 11-13511 (KJC) 2014 Bankr. LEXIS 2000, at *39 (Bankr. D. Del. Apr. 29, 2014) ("Transactions under § 363 must be based upon the sound business judgment of the debtor or trustee."); *In re Decora Indus.*, 2002 U.S. Dist. LEXIS 27031, at *7-8 (D. Del. May 20, 2002) (a debtor satisfies the requirements of § 363(b)(1) through the "sound exercise of

15

business judgment"); *Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Co. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (same).

### 1.    Employee Wages and Related Costs are Entitled to Priority Status under Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code

41.    Claims for Prepetition Compensation are entitled to priority treatment. Specifically, section 507(a)(4) of the Bankruptcy Code provides that employees holding prepetition claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned" within 180 days before the petition date are entitled to priority claim status up to an allowed amount of $12,850 on account of such claim. *See* 11 U.S.C. § 507(a)(4)(A). Similarly, section 507(a)(5) of the Bankruptcy Code provides that employees are granted a priority claim for "contributions to an employee benefit plan arising from services rendered within 180 days before the" petition date. *See* 11 U.S.C. § 507(a)(5)(A). These claims are similarly subject to a cap equal to "(i) the number of employees covered by each such plan multiplied by $12,850; less (ii) the aggregate amount paid to such employees under [section 507(a)(4)], plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan." 11 U.S.C. § 507(a)(5)(B).

42.    In addition, the Prepetition Processing Costs are also entitled to priority treatment under section 507(a)(5). *See Allegheny Int'l, Inc. v. Metropolitan Life Ins. Co.*, 145 B.R. 820, 822-23 (W.D. Pa. 1992) (explaining that "[i]t would be useless to prioritize expenses for contributions to an employee benefit plan and not prioritize the expenses necessary to administer those plans"); *In re Garden Ridge Corp.*, No. 04-10324 (KJC), 2006 Bankr. Lexis 278, at *6 (Bankr. D. Del. Mar. 2, 2006) (noting that "[w]age priority has been a feature of the bankruptcy laws since 1898 [and that] '[i]ts purpose is to alleviate hardship on workers . . .' who may have no

16

other source of income and 'to encourage employees to stand by an employer in financial

difficulty.'") (citing 4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 507.05[1]

(15th ed. 2005)).

43.     The Debtors believe that the amount of the Prepetition Compensation and

obligations under the Benefits Programs owing to nearly all of their employees will not exceed

the sum of $12,850 per employee allowable as a priority claim under sections 507(a)(4) and

507(a)(5) of the Bankruptcy Code (the "Employee Cap").  The Debtors are not seeking to make

any payments to employees in excess of the Employee Cap in the near term, but it is possible

that payments to employees could ultimately exceed the cap when all of the accrued Benefits

Programs are included.  The Debtors view each of the Benefits Programs as a critical component

of their employees' total compensation packages.  Moreover, the Debtors' employees are

essential to the continued operation and success of their business, and the failure to make

payments under the Benefits Programs will negatively affect morale and place undue hardship on

employees that could ultimately result in the loss of employees during this critical restructuring

period.

## 2.     Funds Held in Trust are not Available for General Distributions to Creditors

44.     Section 541(d) of the Bankruptcy Code provides that "property in which the

debtor holds, as of the commencement of the case, only legal title and not an equitable interest"

becomes property of a debtor's estate only to the extent of the debtor's legal title therein.

11 U.S.C. § 541(d).  It is well established in this district that "property a debtor holds in trust for

another is not property of the estate" within the meaning of section 541 of the Bankruptcy Code.

*Golden v. The Guardian (In re Lenox Healthcare, Inc.)*, 343 B.R. 96, 100 (Bankr. D. Del. 2006);

17

*see also In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993) (concluding that property that a debtor holds in express or constructive trust for another does not become property of the estate when the debtor files for bankruptcy); *EBS Pension LLC v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.)*, 243 B.R. 231, 235 (Bankr. D. Del. 2000) (same).

45.     More specifically, it is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of taxing authorities do not constitute property of the estate. *See Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *see also In re Calabrese*, 689 F.3d 312, 321 (3d Cir. 2012) (finding that third-party sales taxes collected by a retailer "resemble trust fund taxes" and never become "property of the estate" but "are merely held by the debtor on behalf of the party that owes the tax . . ."); *Old Rep. Nat'l Tile Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 98-99 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds were commingled with the debtor's other property). Accordingly, such funds are not available for general distribution to a debtor's creditors.

46.     Certain of the Prepetition Deductions, namely deductions taken out of employee paychecks on account of federal, state or local income, FICA, Medicare, state disability and workers' compensation taxes, are held in trust for the benefit of the appropriate federal, state or local taxing authorities.  In addition, employee contributions to the 401(k) Program are held in trust for the benefit of the Debtors' employees themselves.  Thus, these Prepetition Deductions are not property of the Debtors' estates within the meaning of section 541 of the Bankruptcy

18

Code.  As a result, the remittance of the Prepetition Deductions is warranted because such will

not diminish creditor recoveries.

47.    Further, many federal, state and local taxing authorities impose personal liability

on the officers and directors of entities responsible for collecting taxes from employees to the

extent such taxes are collected but not remitted.  Accordingly, if these amounts remain unpaid,

then there is a risk that the Debtors' officers and directors may be subject to lawsuits on account

of such nonpayment during the pendency of these Cases.  Such lawsuits would create a

significant distraction for officers and directors at a time when their focused participation in the

Debtors' bankruptcy-related efforts (in addition to their ordinary course obligations) is critical.

To avoid the serious disruption of the Debtors' bankruptcy-related efforts and operations that

could result from the nonpayment of any withholding taxes, the Debtors seek authority to remit

all of the Prepetition Deductions collected on behalf of their employees to the applicable taxing

authorities to the extent that they have not been remitted.

**3.    The Doctrine of Necessity Authorizes the Payment of the Employee Obligations**

48.    Payment of the Employee Obligations is supported by the "doctrine of necessity."

"The 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the

proposition that a court can authorize the payment of prepetition claims if such payment is

essential to the continued operation of the debtor." *In re Motor Coach Indus. Int'l*, No. 09-078-

SLR, 2009 U.S. Dist. LEXIS 10024, at *7 n.5 (D. Del. Feb. 10, 2009).  Under the doctrine of

necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay

critical prepetition claims, even though such payment is not explicitly authorized under the

Bankruptcy Code.  *See In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992)

(citing *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a pre-petition claim 'is essential to the continued operation of [debtor], payment may be authorized'")).

49.    Courts have been consistently and appropriately reluctant to interfere with corporate decisions "unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985).  To that end, once a debtor articulates a sound basis for its business decisions, courts generally will not entertain objections to a debtor's conduct.  *See In re Dura Auto. Sys.*, No. 06-11202 (KJC), 2007 Bankr. LEXIS 2764, at *259-60 (Bankr. D. Del. Aug. 15, 2007).  In other words, if a debtor's actions satisfy the business judgment rule, those actions generally will be approved.  *Id.*; *In re Shubh Hotels Pittsburgh, LLC*, 439 B.R. at 640 ("Courts have also held that a court should accept a debtor's business judgment, unless there is evidence of bad faith."); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

50.    Citing a combination of the above-identified Bankruptcy Code provisions and the doctrine of necessity, courts have repeatedly recognized "the existence of the judicial power to authorize a debtor . . . to pay prepetition claims where such payment is essential to the continued operations of the debtor."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted); *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims

20

when such payment is necessary for the debtor's survival during chapter 11."); *In re Lehigh &
New England Ry. Co.*, 657 F.2d at 581 (recognizing that "if payment of a [prepetition] claim . . .
is essential to the continued operation of the [debtor] . . ., payment may be authorized . . .");
*Friedman's Inc. v. Roth Staffing Cos., LP (In re Friedman's Inc.)*, No. 09-10161 (CSS), 2011
Bankr. LEXIS 4500, at *7 (Bankr. D. Del. Nov. 30, 2011) ("[M]ost courts will allow [the
payment of prepetition claims] under the 'doctrine of necessity,' if the debtor establishes that in
its business judgment making such payments is critical to the survival of the debtor's business.").

51.    The relief sought herein is essential to preserving the Debtors' estates.
Maintaining the goodwill of the Debtors' employees and ensuring the uninterrupted availability
of their services during this period of uncertainty is critical to the Debtors' reorganization.
Additionally, any harm resulting from the Debtors' failure to obtain the relief requested herein
would not be limited to the Debtors' estates.  The satisfaction of the Debtors' responsibilities
related to the Employee Obligations is critical to the Debtors' employees' ability to meet their
own personal obligations and contribute to the Debtors' operations at this juncture.  Further, in
certain situations (such as with the Prepetition Business Expenses), the Debtors' employees have
already incurred costs and expect reimbursement from the Debtors consistent with the Debtors'
past practices.  Thus, the Debtors' employees would suffer undue hardship and, in many
instances, serious financial difficulties if the relief requested herein is not granted.

52.    In light of the foregoing, the Debtors respectfully submit that the payment of the
Employee Obligations, as requested herein, is (a) in the best interest of the Debtors, their estates
and their creditors and (b) necessary to prevent immediate and irreparable harm to the Debtors
and their estates.

53.    Courts in this district and other districts in the Third Circuit have routinely approved the payment of prepetition claims of employee wages, salaries, expenses and benefits in various chapter 11 cases.  *See*, *e.g.*, *In re M & G USA Corporation*, No. 17-12307 (BLS) (Docket No. 69) (Bankr. D. Del. Nov. 1, 2017); *In re rue21, inc.*, No. 17-22045 (GLT) (Docket No. 509) (Bankr. D. Del. June 12, 2017); *In re Heyl & Patterson, Inc.*, No. 16-21620 (CMB) (Docket No. 33) (Bankr. W.D. Pa. May 4, 2016); *In re Swift Energy Company*, No. 15-12670 (MFW) (Docket No. 211) (Bankr. D. Del. Feb. 2, 2016); *In re Riverhounds Event Center, L.P.*, No. 14-21180 (JAD) (Docket No. 34) (Bankr. W.D. Pa. Mar. 28, 2014);. *In re MSI Corporation*, No. 13-22457 (JAD) (Docket No. 36) (Bankr. W.D. Pa. June 26, 2013).[7]

**B.     Section 363 of the Bankruptcy Code and the Doctrine of Necessity Permit the Debtors to Preserve the Value of the Estates by Continuing the Continued Benefits**

54.    Continuation of the Continued Benefits is supported by the "doctrine of necessity."  As discussed above, "[t]he 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor."  *In re Motor Coach Indus. Int'l*, 2009 U.S. Dist. LEXIS 10024, at *7 n.5.  The Debtors believe that the continuation of the Continued Benefits is necessary to retain the services of their employees during these Cases.  Without these benefits and programs, the Debtors' remaining employees will be more likely to seek out alternative employment.  And without these employees, the Debtors' remaining operations would be adversely affected, thereby hindering the Debtors' ability to reorganize.

---

[7]    Because of their voluminous nature, the orders cited herein are not attached to this Motion.  Copies of these orders, however, are available on request to the Debtors' proposed chapter 11 counsel.

55.     In addition, the Court may authorize continuation of the Continued Benefits in the ordinary course of business, pursuant to section 363 of the Bankruptcy Code.  *See In re Mesa Air Grp., Inc.*, No. 10-10018 (MG), 2010 Bankr. LEXIS 3334, at *7 (Bankr. S.D.N.Y. Sept. 24, 2010) (finding that when section 503(c) does not apply, "[t]he alternative method for approving [incentive plans, including severance plans] is as an 'ordinary course' transaction by the Debtors pursuant to 11 U.S.C. § 363"); *see also Collier on Bankruptcy* ¶ 503.17 (Richard Levin & Henry J. Sommer eds., 16th ed.) (noting that when section 503(c)(3) applies, "[t]he majority view is that this standard is no different from the business judgment standard applied under section 363(b)").

56.     As set forth above, historically, the Debtors have maintained the Severance Program for certain of their executive employees.  As such, it is appropriate that the Debtors be authorized to continue—in their discretion, as warranted, on a case-by-case basis—this program. *See Mesa Air*, 2010 Bankr. LEXIS 3334, at *10 (approving incentive plan, in part, upon finding that the debtors maintained such programs "consistent with historic practices and in the ordinary course of [their] business.").  Moreover, continuation of the Severance Program, along with the implementation of certain incentive programs, will encourage irreplaceable executive employees to continue working for the Debtors notwithstanding the uncertainty attendant to all bankruptcy cases, thereby enabling the Debtors to take all steps necessary to maximize the value of their estates.

57.     In light of the foregoing, the Debtors respectfully submit that the continuation of the Continued Benefits, as requested herein, is (a) in the best interest of the Debtors, their estates and their creditors and (b) necessary to prevent immediate and irreparable harm to the Debtors and their estates.

23

**C.** **The Court Should Authorize All Applicable Banks and Financial Institutions to Honor and Pay Checks in Connection with the Employee Obligations and the Continuation of the Continued Benefits**

58.     In addition, by this Motion, the Debtors request that all applicable banks and other financial institutions (collectively, the "Banks") be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the Employee Obligations and the Continued Benefits, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.  The Debtors represent that these checks are drawn on specific disbursement accounts and can be readily identified as relating directly to the authorized payment of amounts or programs discussed herein.  Accordingly, the Debtors believe that such checks should be honored.

**REQUESTS FOR IMMEDIATE RELIEF AND WAIVER OF STAY**

59.     Pursuant to Bankruptcy Rules 6003(b) and 6004(h), the Debtors seek (a) immediate entry of an order granting the relief sought herein and (b) a waiver of any stay of the effectiveness of such an order.  Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition."  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  From this, courts have ruled that, where the failure to grant any such requested relief

24

would result in immediate and irreparable harm to a debtor's estate, a court may allow a debtor to pay all or part of a claim that arose prepetition immediately.

60.     As set forth above, the payment of the Employee Obligations and continuation of Continued Benefits are necessary to prevent immediate and irreparable damage to the Debtors' estates and prevent employees from experiencing additional hardships during an already difficult time.  Without the continued efforts of their employees, the Debtors' ability to reorganize will be markedly more difficult.  Accordingly, the Debtors submit that ample cause exists to justify (a) the immediate entry of an order granting the relief sought herein and (b) a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## RESERVATION OF RIGHTS

61.     Nothing contained herein is intended to be or should be construed as:  (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights or any other party-in-interests' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute a claim for an Employee Obligation, a Continued Benefit or an obligation under the Annual Incentives Program; or (e) the assumption of any executory contract or unexpired lease.

## NOTICE

62.     Notice of this Motion will be provided to:  (a) the Office of the United States Trustee for the Western District of Pennsylvania; (b) the United States Attorney for the Western District of Pennsylvania; (c) those creditors holding the 30 largest unsecured claims against the Debtors; (d) Simpson Thacher & Bartlett LLP, as counsel to Angelo, Gordon Energy Servicer, LLC in its capacity as Administrative Agent and Collateral Agent for the Prepetition First Lien Credit Agreement; (e) Wilmington Savings Fund Society, FSB, as the indenture trustee for those

certain 1.00%/8.00% Senior Secured Second Lien Notes due 2020 (the "Prepetition Second Lien Notes"); (f) Akin Gump Strauss Hauer & Feld LLP, as counsel to an ad hoc group of holders of the Prepetition Second Lien Notes; (g) BOKF, NA, as the indenture trustee for those certain 8.875% Senior Notes due 2020 and 6.250% Senior Notes due 2022; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; (j) the office of the attorney general for the states in which the Debtors operate; (k) the Banks; and (l) all parties entitled to notice pursuant to the Local Rules.  As this Motion is seeking "first day" relief, this Motion and any order entered hereon will be served in accordance with the Local Rules.  Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is necessary.

## NO PRIOR REQUEST

63.    No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Interim Order and the Proposed Final Order and grant such other and further relief as may be appropriate.

26

Dated:  May 18, 2018
(Pittsburgh, Pennsylvania)

Respectfully submitted,

/s/ James D. Newell
James D. Newell (PA 51337)
Timothy P. Palmer (PA 86165)
Tyler S. Dischinger (PA 314299)
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
Telephone:  (412) 562-8800
Facsimile:  (412) 562-1041
Email:  james.newell@bipc.com
          timothy.palmer@bipc.com
          tyler.dischinger@bipc.com

     - and -

Scott J. Greenberg
Michael J. Cohen
Anna Kordas
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Email:  sgreenberg@jonesday.com
          mcohen@jonesday.com
          akordas@jonesday.com

     - and -

Thomas A. Howley
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002-2712
Telephone:  (832) 239-3939
Facsimile:  (832) 239-3600
Email:  tahowley@jonesday.com

PROPOSED CO-COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION

4822-3377-9814, v. 1