# **EXHIBIT B**

# **STEELE DECLARATION**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| R.E. GAS DEVELOPMENT, LLC, *et al.*,[1] | : | Case No. 18-22032 (JAD) |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |
| R.E. GAS DEVELOPMENT, LLC, *et al.*, | : | |
| | : | |
| Movants, | : | |
| | : | |
| v. | : | |
| | : | |
| NO RESPONDENT, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**DECLARATION OF BENJAMIN J. STEELE IN
SUPPORT OF DEBTORS' EMERGENCY APPLICATION
FOR APPOINTMENT OF PRIME CLERK LLC AS CLAIMS
AND NOTICING AGENT *NUNC PRO TUNC* TO THE PETITION DATE**

I, Benjamin J. Steele, under penalty of perjury, declare as follows:

1.  I am a Vice President of Prime Clerk LLC ("Prime Clerk"), a chapter 11 administrative services firm whose headquarters are located at 830 3rd Avenue, 9th Floor, New York, New York 10022. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): R.E. Gas Development, LLC (5422); Rex Energy Corporation (4402); Rex Energy Operating Corp. (0390); and Rex Energy I, LLC (9799). The address of each of the Debtors is 366 Walker Drive, State College, Pennsylvania 16801.

-1-

2. This Declaration is made in support of the *Debtors' Emergency Application for Appointment and Retention of Prime Clerk LLC as Claims and Noticing Agent Nunc Pro Tunc to the Petition Date*, filed contemporaneously herewith (the "Application").[2]

3. Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Prime Clerk's professionals have acted as official claims and noticing agent in many large bankruptcy cases in districts in the Third Circuit and in other districts nationwide, including, among others: *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del.); *In re M & G USA Corporation*, No. 1712307 (BLS) (Bankr. D. Del.); *In re General Wireless Operations Inc. dba RadioShack,* No. 17-10506 (BLS) (Bankr. D. Del.); *In re Lily Robotics, Inc.,* No. 17-10426 (KJC) (Bankr. D. Del.); *In re Ultrapetrol (Bahamas) Limited,* No. 17-22168 (RDD) (Bankr. S.D.N.Y.); *In re Bonanza Creek Energy, Inc.,* No. 17-10015 (KJC) (Bankr. D. Del.); *In re Violin Memory, Inc.,* No. 16-12782 (LSS) (Bankr. D. Del.); *In re Gracious Home LLC,* No. 16-13500 (MKV) (Bankr. S.D.N.Y.); *In re DirectBuy Holdings, Inc.,* No. 16-12435 (CSS) (Bankr. D. Del.); *In re American Apparel, LLC,* No. 16-12551 (BLS) (Bankr. D. Del.); *In re DACCO Transmission Parts (NY), Inc.,* No. 16-13245 (MKV) (Bankr. S.D.N.Y.); *In re Shoreline Energy LLC,* No. 16-35571 (DRJ) (Bankr. S.D. Tex.); *In re Golfsmith International Holdings, Inc.,* No. 16-12033 (LSS) (Bankr. D. Del.); *In re International Shipholding Corp.,* No. 16-12220 (SMB) (Bankr. S.D.N.Y.); *In re Global Geophysical Services,*

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

*LLC,* No. 16-20306 (DRJ) (Bankr. S.D. Tex.); and *In re Hercules Offshore, Inc.,* No. 16-11385 (KJC) (Bankr. D. Del).

    4.    As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Prime Clerk will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "Clerk"), the services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical and support services as specified in the Application and the Engagement Agreement. In performing such services, Prime Clerk will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as Exhibit C to the Application.

    5.    Prime Clerk represents, among other things, the following:

    (a)    Prime Clerk is not a creditor of the Debtors;

    (b)    Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Cases;

    (c)    By accepting employment in these Cases, Prime Clerk waives any rights to receive compensation from the United States government in connection with these Cases;

    (d)    In its capacity as the Claims and Noticing Agent in these Cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

    (e)    Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Cases;

    (f)    Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

    (g)    In its capacity as Claims and Noticing Agent in these Cases, Prime Clerk will not intentionally misrepresent any fact to any person;

(h) Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of proof of claim and claim transfers;

(i) Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j) None of the services provided by Prime Clerk as Claims and Noticing Agent in these Cases shall be at the expense of the Clerk's office.

6. Although the Debtors do not propose to retain Prime Clerk under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in these Cases. The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, secured creditors, lenders, the Debtors' 30 largest unsecured creditors on a consolidated basis and other parties. The results of the conflict check were compiled and reviewed by Prime Clerk professionals under my supervision. At this time, and as set forth in further detail herein, Prime Clerk is not aware of any connection that would present a disqualifying conflict of interest. Should Prime Clerk discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Prime Clerk will use reasonable efforts to file promptly a supplemental declaration.

7. To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Prime Clerk, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties. Prime Clerk may have relationships with certain of the Debtors' creditors as vendors or

-4-

in connection with cases in which Prime Clerk serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

8. On December 7, 2017, Prime Clerk received an investment from an investment vehicle formed by Carlyle Strategic Partners IV, L.P. ("CSP IV"), an investment fund managed by Carlyle Investment Management L.L.C., each affiliates of The Carlyle Group (together with its subsidiaries, "Carlyle").  As a result of the transaction, Prime Clerk and CSP IV are affiliates under applicable law.  As of the date hereof, CSP IV is not identified on the Potential Parties in Interest list.  However, the following disclosure is made out of an abundance of caution and in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

9. Carlyle is a global alternative asset manager with approximately 1,550 employees in 19 countries over six continents that manages over $170 billion in over 300 investment vehicles spanning Corporate Private Equity, Real Assets, Global Credit and Investment Solutions.  Carlyle's Corporate Private Equity funds, Real Assets funds, Global Credit funds and Investment Solutions funds (collectively, the "Funds") are managed independently from each other, and Carlyle maintains an internal information barrier between its Global Credit funds and the rest of the Carlyle funds.  CSP IV, Carlyle Strategic Partners II, L.P. and Carlyle Strategic Partners III, L.P. (collectively, "CSP") are Global Credit funds that each are owned by a diverse group of limited partners, which exert no control over CSP's investment decisions, and a general partner affiliated with Carlyle.  All CSP investment professionals involved with Prime Clerk are dedicated solely to CSP and are not involved in the Corporate Private Equity, Real Assets or Investment Solutions businesses, although, from time to time, one or more CSP investment professionals may sit on the investment committee of another Global Credit fund.  CSP operates autonomously from and makes independent investment decisions from the other Global Credit

-5-

funds, the Corporate Private Equity funds, the Real Assets funds and the Investment Solutions funds.

10. Designees of CSP IV are members of the Board of Managers of Prime Clerk's ultimate parent company. No material nonpublic information about the Debtors has or will be furnished by Prime Clerk to Carlyle or such members of the Board of Managers. Other than such Board designees at its ultimate parent company, Prime Clerk operates independently from Carlyle, including that it does not share any employees, officers or other management with Carlyle, has separate offices in separate buildings and has separate IT systems. Carlyle personnel do not work in Prime Clerk offices nor do they work on Prime Clerk client matters or have access to Prime Clerk client information, client files or client personnel. No Prime Clerk executive or employee is a director, officer or employee of Carlyle.

11. Prime Clerk has searched the names of the Debtors and the names of the potential parties in interest provided by the Debtors against: (a) the names of the CSP funds, (b) the names of Carlyle's other Global Credit funds and (c) the names of the Corporate Private Equity funds. Prime Clerk also has searched the names of the Debtors against the publicly-known investments of the Corporate Private Equity funds as set forth in the list most recently provided to Prime Clerk by Carlyle's internal compliance department ("Carlyle Compliance"). The conflicts search does not include the names of the Real Assets funds, the Investment Solutions funds or any of their or the other Global Credit funds' investments, nor does it include any portfolio companies of any of the Funds (other than those of CSP and the Corporate Private Equity funds as described above). Based solely on the foregoing search, Prime Clerk has determined, to the best of its knowledge, that there are no material connections that require disclosure. Because of any applicable securities laws and the fact that Prime Clerk and Carlyle

NAI-1503725761v1

operate independently, prior to the Petition Date, Prime Clerk was unable to further investigate with Carlyle Compliance, to the extent necessary, any potential or actual connection between any of CSP, the other Global Credit funds and the Corporate Private Equity funds and the Debtors and the potential parties in interest.  In addition, after the Petition Date, Prime Clerk will promptly request Carlyle Compliance to search the names of the Debtors against CSP's respective investments.  To the extent that Prime Clerk learns of any material connections involving such entities and/or such investments with the Debtors, Prime Clerk will promptly file a supplemental disclosure.

12. Notwithstanding anything to the contrary contained herein, one or more of the Funds may, in the ordinary course and from time to time, hold, control and/or manage loans to, or investments in, the Debtors and/or potential parties in interest and/or may trade debt and/or equity securities in the Debtors and/or potential parties in interest.  In addition, the Funds also may have had, currently have or may in the future have business relationships or other connections with the Debtors or other potential parties in interest.  Other than as specifically noted herein, Prime Clerk has not undertaken to determine the existence, nature and/or full scope of any business relationships or other connections that any Carlyle entity may have with the Debtors and their affiliates or the potential parties in interest in these chapter 11 cases.

13. In addition, Prime Clerk may have had, may currently have or may in the future have business relationships with CSP and other subsidiaries of Carlyle including, among other entities, portfolio companies of Carlyle, unrelated to the Debtors.

14. Based on, among other things, the business separation between Prime Clerk and Carlyle and in light of the administrative nature of the services proposed to be performed by

Prime Clerk for the Debtors, Prime Clerk believes that it does not hold or represent an interest adverse to the Debtors with respect to its engagement.

15. Certain of Prime Clerk's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases. Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; Togut, Segal & Segal LLP; Hughes Hubbard & Reed LLP; Gibson, Dunn & Crutcher LLP; Paul, Weiss, Rifkind, Wharton & Garrison LLP; Proskauer Rose LLP; McKinsey & Company; Centerview Partners LLC; KPMG LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc.; and Kurtzman Carson Consultants LLC. Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when these Cases were filed.

16. Prime Clerk has and will continue to represent clients in matters unrelated to these Cases. In addition, Prime Clerk and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals and other parties in interest that may be involved in these Cases. Prime Clerk may also provide professional services to entities or persons that may be creditors or parties in interest in these Cases, which services do not directly relate to, or have any direct connection with, these Cases or the Debtors.

17. Prime Clerk and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms and financial advisors. Such firms engaged by Prime Clerk or its personnel may appear in these Cases representing the Debtors or parties in

NAI-1503725761v1

interest. All engagements where such firms represent Prime Clerk or its personnel in their individual capacities are unrelated to these Cases.

18. From time to time, Prime Clerk partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Prime Clerk's or its personnel's knowledge. Each Prime Clerk partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell or vote on any particular security. Each Investment Fund is generally operated as a blind pool, meaning that when the Prime Clerk partners or employees make an investment in the particular Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

19. From time to time, Prime Clerk partners or employees may personally directly acquire a debt or equity security of a company, which may be one of the Debtors or their affiliates. Prime Clerk has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work. In this regard, subject to paragraph 18, all Prime Clerk partners and employees are barred from trading in securities with respect to matters in which Prime Clerk is retained. Subject to paragraph 18, upon information and belief, and upon reasonable inquiry, Prime Clerk does not believe that any of its partners or employees own any debt or equity securities of a company that is a Debtor or any of its affiliates.

NAI-1503725761v1

20.     Based on the foregoing, I believe that Prime Clerk is a "<u>disinterested person</u>" as that term is defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my knowledge and belief, neither Prime Clerk nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Prime Clerk is to be engaged.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on May 18, 2018

                                            */s/ Benjamin J. Steele*
                                            Benjamin J. Steele
                                            Vice President
                                            Prime Clerk LLC
                                            830 3rd Avenue, 9th Floor
                                            New York, New York 10022

4823-4067-0566, v. 1